IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL JOHN SAUNDERS,

        Plaintiff,

  v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

17-cv-616-bbc

---

      Plaintiff Michael John Saunders is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Dkt. #9. Plaintiff seeks an award of benefits or, alternatively, a remand of that decision, on the grounds that the administrative law judge who decided the case (1) did not account adequately for his moderate limitations in concentration, persistence or pace; and (2) should have given more weight to the opinions of the state consulting psychologists who examined him. For the reasons explained below, I find that the administrative law judge did not err in reaching her decision. Accordingly, plaintiff's claim will be denied.

      The following facts are drawn from the administrative record (AR).

FACTS

A. Social Security Applications and Background

Plaintiff Michael Saunders was born on May 26, 1970. AR 100. He first filed for disability insurance and supplemental security benefits in September 2005, contending that he had been disabled since July 28, 2004 because of a variety of physical and cognitive impairments. AR 100, 156. Plaintiff's claim for benefits has been denied by four different administrative law judges, who issued unfavorable decisions on January 28, 2009, September 3, 2010, January 24, 2014 and most recently on June 23, 2017. AR 12-23, 218-27, 505-16, 706-22.

The 2009 decision was remanded primarily because plaintiff lacked a mental health assessment and the 2010 decision was remanded for further consideration of the residual functional capacity assessment in light of the opinions of treating and non-treating medical sources. AR 505. In 2014, plaintiff amended his alleged onset date to August 31, 2009 and filed additional applications. AR 505, 706.

Addressing plaintiff's claim in 2014, the administrative law judge found that although his case had been remanded for further assessment of plaintiff's mental health impairments, plaintiff had failed to show that he had at least 12 continuous months of significant and ongoing mental health symptoms and the record included no evidence that plaintiff had undergone any psychiatric or psychological treatment or taken any psychotropic medication. Id. When plaintiff sought review of that decision in this court in 2015, the parties filed a joint stipulation for remand to the commissioner, which I granted on May 6, 2016. Dkt.

2

3##13-14, case no. 15-cv-627. In its remand order, the Appeals Council noted that the administrative law judge's 2014 finding that plaintiff did not have a severe mental impairment was inconsistent with the medical expert testimony provided by Dr. Miriam Sherman in December 2013, Dr. Shakil Mohammed in July 2013 and Dr. Melancharbol in February 2010, and the consultative examinations and psychological testing performed by Dr. Marcus Desmonde in 2009 and Dr. Kurt Weber in 2013. AR 706.

On May 2, 2017, Administrative Law Judge Debra Meacham held a hearing at which plaintiff and a vocational expert testified. AR 707, 938-73. Plaintiff was represented by counsel at the hearing. On June 23, 2017, the administrative law judge concluded that plaintiff was not disabled. AR 706-22. The Appeals Council denied plaintiff's request for review, making the hearing decision the final decision of the commissioner.

B. Relevant Medical Evidence

At issue in this case are plaintiff's mental impairments, particularly his ability to maintain concentration, persistence and pace. Critical to plaintiff's appeal are the opinions of three medical experts who testified at plaintiff's previous administrative hearings and two consultative psychiatrists who examined plaintiff. The findings of these experts are summarized below. The parties agree that plaintiff has not had any mental health treatment.

3

1. <u>Dr. Marcus Desmonde</u>

Dr. Desmonde is a state consultative examiner who performed a mental status evaluation of plaintiff on August 31, 2009. He wrote that plaintiff should be able to understand simple verbal instructions but may have some difficulty carrying out tasks with reasonable persistence and pace. AR 315-17. Plaintiff's cognitive test results ranged from extremely low to borderline. AR 316-17. On a standard mental residual functional capacity assessment form, Dr. Desmonde checked "mild" to "moderate" for plaintiff's ability to understand, remember and carry out simple instructions; "marked" for his ability to understand, remember and carry out complex instructions; "moderate" to "marked" for his ability to make judgments on simple work-related decisions; and "moderate" for his ability to make judgments on complex work-related decisions. AR 329.

2. <u>Dr. Melancharbol</u>

Dr. Melancharbol testified as a medical expert at plaintiff's February 17, 2010 administrative hearing. From his review of the record, including the report of Dr. Desmonde, Dr. Melancharbol determined that plaintiff had an organic mental disorder, borderline intellectual functioning and a personality problem with low frustration tolerance that caused moderate limitations in concentration, persistence or pace. He testified that plaintiff was restricted to simple, repetitive tasks with up to four-step instructions in a habituated setting, no complex problem solving or work-related decisions and object-oriented work with things and not people. AR 476-80.

3. Dr. Kurt Weber

At the request of Disability Determination Services, Dr. Weber conducted a consultative examination and administered psychological testing to plaintiff on February 6, 2013. He found that plaintiff had low average to average intellectual functioning, could concentrate long enough to hold a conversation, read and work on the computer and was "somewhat" able to perform his daily activities in a timely manner. Dr. Weber noted that plaintiff was suffering from depression but that he was not taking any psychoactive medication. It was opinion that plaintiff had moderate limitations in the ability to understand, remember and carry out simple and complex instructions and in maintaining concentration, attention and work pace. AR 639-46, 650. (Although Dr. Weber made other findings related to withstanding work stress and adapting to changes in the workplace, plaintiff has not challenged the administrative law judge's assessment of his abilities in these areas.)

4. Dr. Shakil Mohammed

At plaintiff's July 12, 2013 administrative hearing, Dr. Shakil Mohammed testified as a medical expert that he had reviewed the findings of Dr. Desmonde and Dr. Weber and determined that plaintiff had moderate limitations in concentration, persistence and pace and suffered from adjustment disorder, depressive disorder and cognitive disorder. He also testified that plaintiff's concentration was only mildly limited and that he was capable of "very mildly complex tasks." AR 666-71.

5

5. Dr. Miriam Sherman

At plaintiff's December 19, 2013 hearing, Dr. Miriam Sherman testified as a medical expert that, in her opinion, plaintiff suffered from major depressive disorder and dysthymic disorder and had moderate difficulty maintaining concentration. She had reviewed Dr. Desmonde's and Dr. Weber's findings but was not sure what to make of Dr. Desmonde's "marked" assessments because neither Dr. Weber nor plaintiff's occupational medicine doctor had noted similar findings. AR 693. Dr. Sherman testified that plaintiff appeared capable of performing simple, repetitive tasks of a nonpublic nature. AR 686, 692.

C. 2017 Administrative Proceedings

At the May 2, 2017 telephonic administrative hearing, plaintiff testified that for the past two and a half years, he has been working about 20 hours a week as a fry cook in a supper club owned by a family friend. He cannot work more hours because of his back pain. Plaintiff has to ask the wait staff a lot of questions about the food orders to make sure that he understands them, and he cannot remember new recipes unless they are written down. AR 945-48, 956-57. He struggles with reading and cannot concentrate on more than one thing at a time. During the course of a television show, he picks up his phone to play a game every few minutes. AR 951-52. He is not on any medication for his mental health symptoms. AR 953. Plaintiff has trouble processing information and has to take two 15 to 20-minute breaks during his five hour shift. AR 956. He cannot handle a fast-paced environment. The supper club serves between 25 and 110 customers a night but plaintiff

6

always has someone working with him on the busier nights (Friday and Saturday). AR 958-59.

On June 23, 2017, the administrative law judge issued a written decision, finding that plaintiff was severely impaired by degenerative disc disease, spine disorders, major joint dysfunction, major depressive disorder and borderline intellectual functioning. AR 715. She noted that even though the previous administrative law judge accurately noted that plaintiff had not received mental health treatment, evidence from impartial medical experts and consultative mental health examiners showed that plaintiff had severe mental impairments that caused moderate functional limitation. AR 716. However, the administrative law judge concluded that none of plaintiff's impairments, alone or in combination, met or equaled the criteria for any listed impairment. AR 713. In reviewing the "B criteria" of the mental impairment listings, the administrative law judge found that plaintiff had moderate limitations in concentration, persistence or pace, in accordance with the opinions of Dr. Desmonde, Dr. Melancharbol, Dr. Weber and Dr. Sherman. AR 713-15.

The administrative law judge further determined that plaintiff retained the residual functional capacity to perform unskilled light work limited to simple, routine and repetitive tasks; no fast-paced or production line or tandem tasks; no more than occasional changes in workplace setting; GED levels of one or two; and occasional interactions with others. AR 715. (The administrative law judge also assessed some other physical limitations that are not relevant to plaintiff's appeal.) In reaching this decision, the administrative law judge stated that she gave "great weight" to Dr. Melancharbol's opinion and incorporated all but

7

one of his findings in her residual functional capacity assessment for plaintiff. She did not adopt Dr. Melancharbol's recommendation that plaintiff could perform only object-based work because no other medical source stated a similar opinion. AR 719. She gave some weight to Dr. Desmonde's opinion but did not adopt his "marked" findings because she found that the record did not support them. Id. The administrative law judge gave limited weight to Dr. Weber's findings that plaintiff had moderate limitations in every area of mental functioning because the findings were inconsistent with the doctor's own testing. However, she noted that her residual functional capacity assessment was consistent with Dr. Weber's finding that plaintiff had low average to average attention, memory and intellect. AR 720. Finally, the administrative law judge gave some weight to the testimony of Dr. Mohammed and Dr. Sherman, particularly with respect to plaintiff's ability to maintain concentration, persistence and pace and ability to sustain simple, repetitive tasks. Id.

Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge found that plaintiff could not perform his past relevant work but that he could perform jobs that exist in significant numbers in the national economy, including laundry worker, router, sweeper and ampule sealer. AR 720-21. The administrative law judge did not otherwise discuss plaintiff's mental health with the vocational expert. AR 966-68.

OPINION

Plaintiff's primary argument is that the administrative law judge's residual functional capacity assessment and hypothetical question to the vocational expert did not account adequately for her finding that plaintiff had moderate limitations in concentration, persistence or pace. He also contends that the administrative law judge misstated the record with respect to the consultative examiners' opinions on concentration, persistence and pace and should have given more weight to their findings than she gave to the testimony of the medical experts, who did not examine plaintiff. 20 C.F.R. § 404.1527 ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Although the arguments are related, I will address them separately.

    A. <u>Residual Functional Capacity Assessment and Hypothetical Question</u>

As plaintiff points out, the Court of Appeals for the Seventh Circuit has made clear that an administrative law judge must orient the vocational expert to all of a claimant's limitations, including those in concentration, persistence or pace. <u>O'Connor-Spinner v. Astrue</u>, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). Although the administrative law judge does not need to use the magic words "concentration, persistence or pace," the

record must show that the vocational expert was aware of the claimant's particular limitations. Yurt v. Colvin, 758 F.3d 850, 857-58 (7th Cir. 2014). The court of appeals has held that an administrative law judge must explicitly address the limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology. Lanigan v. Berryhill, 865 F.3d 558, 565 (7th Cir. 2017).

As to the first two exceptions, although the vocational expert was present at the hearing, there is no evidence in the record suggesting that he was informed of the full scope of plaintiff's mental impairments and concentration, persistence or pace limitations. Plaintiff argues that the commissioner may not rely on the third exception because the terms used by the administrative law–"simple, routine and repetitive tasks" and "no fast-paced or production line or tandem tasks"--fail to account for plaintiff's specific limitations in concentration, persistence or pace. Plaintiff is correct that the court of appeals has held that the types of limitations the administrative law judge included in her residual functional capacity assessment and the hypothetical question are general functional limitations related to unskilled work that do not address a claimant's general deficiencies in concentration, persistence or pace. O'Connor-Spinner, 627 F.3d at 620. See also Varga v. Colvin, 794 F.3d 809, 815 (7th Cir. 2015) (failure to define "fast paced production" was problematic); Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009) ("simple, routine tasks" did not account for

limited ability to understand instructions); Young v. Barnhart, 362 F.3d 995, 1004 (7th Cir. 2004) ("simple, routine" tasks did not adequately account for "impairment in concentration"); Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008) ("simple, unskilled work" does not account for difficulty with memory, concentration or mood swings).

In this case, however, the administrative law judge did not merely assume that the term "simple, routine and repetitive tasks" would account for plaintiff's limitations in concentration, persistence or pace. Rather, she relied on the expert testimony of Dr. Melancharbol, who reviewed plaintiff's medical record, and Dr. Desmonde's evaluation and concluded that plaintiff was capable of performing simple, repetitive tasks in a habituated setting. Although the administrative law judge gave only some weight to the opinions of Dr. Sherman and Dr. Mohammed, their opinions are generally consistent with her assessment as well. Dr. Sherman testified that plaintiff had moderate difficulty maintaining concentration but appeared capable of performing simple, repetitive tasks. Dr. Mohammed testified that plaintiff had moderate limitations in concentration, persistence or pace but concluded that plaintiff's concentration was only mildly limited and that he was capable of "very mildly complex tasks."

As the commissioner points out, the Court of Appeals for the Seventh Circuit has held in both published and unpublished opinions that an administrative law judge is entitled to rely on a medical expert who "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." Milliken v. Astrue, 397 Fed. Appx. 218, 221 (7th Cir. 2010). See also Varga, 794 F.3d at 816 ("[A]n ALJ may rely on a doctor's narrative

RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); Capman v. Colvin, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (administrative law judge may reasonably rely on psychologist's "bottom line-assessment" in narrative section of residual functional capacity assessment, at least where it is not inconsistent with checklist findings in other section of worksheet); Johansen v. Barnhart, 314 F.3d 283, (7th Cir. 2002) (in formulating hypothetical for vocational expert, administrative law judge reasonably relied on physician's opinion that plaintiff could perform loss-stress, repetitive work); Wade v. Colvin, No. 12–8260, 2014 WL 349261, at *12 (N.D. Ill. Jan. 31, 2014) ("[A]s many other courts have found, the ALJ need only look to Section III for the RFC assessment as directed by the POMS.") (citing cases from other circuits).

In a misplaced argument, plaintiff seems to contend that Dr. Melancharbol improperly translated his own assessment of plaintiff's moderate concentration, persistence or pace limitations into "simple, repetitive tasks," in violation of the mandate of the court of appeals in O'Connor-Spinner. However, in Varga and Capman, the court of appeals was concerned with the way in which the *administrative law judge* accounted for concentration, persistence or pace limitations. The court of appeals has not held that a *medical professional* may not translate his or her own findings into the ability to perform simple, repetitive tasks. Because Dr. Melancharbol and Dr. Sherman, and to a lesser extent, Dr. Mohammend, testified as experts that simple, routine and repetitive tasks would account for all of plaintiff's limitations in concentration, persistence or pace, it was not reversible error for the administrative law judge to rely on those medical opinions in formulating her residual functional capacity

12

assessment and hypothetical questions to the vocational expert. Wolf v. Colvin, 214 F. Supp. 3d 736, 742 (W.D. Wis. 2016) (finding same).

In a brief argument, plaintiff contends that the other limitations assessed by the administrative law judge related to "occasional decision making," "occasional changes in work setting" and "no fast-paced" tasks also fail to address concentration, persistence or pace. However, plaintiff fails to provide any explanation or otherwise develop his argument. Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal citation omitted). In any event, "placing restrictions as to consistency of tasks, speed of work and requiring breaks do address a CPP limitation, or at least the court finds no error in the ALJ's approach." Hale v. Berryhill, 2017 WL 4180160, at *6 (W.D. Wis. Sept. 21, 2017) (addressing similar argument).

Finally, plaintiff criticizes the administrative law judge for failing to define "fast paced" tasks, which the Court of Appeals for the Seventh Circuit has said may prevent the vocational expert from assessing whether a person with plaintiff's limitations could maintain the pace proposed. Varga, 794 F.3d at 814-15. However, in this case, there is no evidence showing what specific pace plaintiff could tolerate. Dr. Desmonde stated only that plaintiff would have some difficulties carrying out tasks with "reasonable pace." AR 317. Although plaintiff testified about having trouble when things got busy at his job, he spoke only about not being able to handle "fast-paced" work and needing what qualifies as routine and repetitive instructions with respect to food orders and recipes. In any event, Dr. Melancharbol made

clear that performing simple, repetitive tasks in a habituated setting—like the one plaintiff later described needing in his current work—would accommodate plaintiff's mental impairments. The fact that the administrative law judge included additional or more restrictive limitations in the residual functional capacity assessment does not make either it or the corresponding hypothetical question erroneous.

### B. Evaluation of Expert Opinions

Plaintiff argues that the administrative law judge based her decision about plaintiff's mental health limitations on a misunderstanding of the expert opinions and should have given greater weight to the opinions of Dr. Desmonde and Dr. Weber, who examined plaintiff. As an initial matter, plaintiff contends that Dr. Desmonde was the only expert to address concentration, persistence or pace, but this was not the case. With the exception of Dr. Sherman, who addressed only plaintiff's concentration, all of the medical experts discussed plaintiff's concentration, persistence and pace to some degree. Most important, the administrative law judge relied primarily on Dr. Melancharbol who stated specifically that plaintiff's mental impairments caused moderate limitations in concentration, persistence or pace and that confining him to simple, repetitive tasks in a habituated setting would address those limitations. AR 476-79.

Although plaintiff challenges some of the reasons that the administrative law judge gave for giving only partial weight to Dr. Desmonde's and Dr. Weber's opinions, it is not clear what plaintiff believes the administrative law judge ignored that would have made a

14

difference in the residual functional capacity assessment with respect to concentration, persistence or pace. Plaintiff contends that the administrative law judge rejected Dr. Desmonde's report based solely on a finding that Dr. Desmonde said that he did not "over interpret" plaintiff's test results because plaintiff did not have his reading glasses with him during the testing. Although the administrative law judge mentioned that comment as one reason she discounted Dr. Desmonde's report, she found that the record as a whole did not support the severity of some limitations he assessed for plaintiff. However, the administrative law judge's objections to Dr. Desmonde's findings do not appear to relate to concentration, persistence or pace.

Even though Dr. Desmonde checked off boxes showing that plaintiff had "moderate to marked" limitations in the ability to make judgments on simple work-related decisions, the remainder of his opinion with respect to other areas relevant to concentration, persistence or pace is generally consistent with the administrative law judge's assessment. Apart from checking off boxes on a form, Dr. Desmonde did not provide any detailed comments on plaintiff's abilities in this area, except for noting that plaintiff was able to understand simple verbal instructions and may have some difficulty carrying out tasks with reasonable persistence and pace. Moreover, Dr. Desmonde's moderate to marked finding as to *simple* decisions seems inconsistent with his finding that plaintiff had only moderate limitations in his ability to make judgments on *complex* work-related decisions. Nothing in the record supports a finding that plaintiff had a greater ability to deal with complex decisions than simple decisions. Without more, I cannot conclude that the administrative law judge

15

committed reversible error in adopting a moderate rather than a marked limitation in the overall area of concentration, persistence or pace.

Plaintiff's arguments with respect to Dr. Weber are equally unpersuasive. Dr. Weber found that plaintiff had moderate limitations in the ability to understand, remember and carry out simple and complex instructions and in maintaining concentration, attention and work pace. Dr. Weber also found that plaintiff had moderate limitations in other areas–a finding with which the administrative law judge disagreed. However, plaintiff has not argued that the administrative law judge erred in failing to incorporate any of the other moderate findings in her residual functional capacity assessment or in her hypothetical to the vocational expert, so they are irrelevant to this appeal. Finally, even though plaintiff contends that the administrative law judge misinterpreted Dr. Weber's evaluation as being limited to plaintiff's intellectual functioning, he does not explain why he believes this to be the case. The administrative law judge did not say this in her opinion or otherwise indicate that this was her perception. Accordingly, plaintiff has not shown that the administrative law judge erred in failing to give greater weight to Dr. Desmonde's and Dr. Weber's opinions with respect to plaintiff's concentration, persistence or pace.

ORDER

IT IS ORDERED that plaintiff Michael John Saunders's motion for summary judgment, dkt. #9, is DENIED. The final decision of defendant Nancy Berryhill, Acting

Commissioner of Social Security, denying plaintiff benefits, is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 23d day of August, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge